UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

MOLLY SINGLETON,
Plaintiff,
v.
MIDLAND CREDIT MANAGEMENT, INC. and THE BANK OF MISSOURI,
Defendants.

Case No.: 3:25-cv-03462-WQH-JLB

**ORDER**

HAYES, Judge:

The matter before the Court is the Motion to Dismiss Plaintiff's First Amended Complaint ("Motion to Dismiss the FAC") filed by Defendant The Bank of Missouri. (ECF No. 15.)

**I. BACKGROUND**

On December 8, 2025, Plaintiff Molly Singleton ("Plaintiff") filed a Complaint against Defendants Midland Credit Management, Inc. ("MCM"), and The Bank of Missouri ("TBOM") (collectively, "Defendants"). (ECF No. 1.)

On February 11, 2026, Plaintiff filed a First Amended Complaint ("FAC"), the operative pleading. (ECF No. 11.) The FAC asserts four claims against Defendants: (1) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*,

by MCM; (2) violation of the Federal Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*, by MCM; (3) negligence by TBOM; and (4) "substantial assistance" of violations of the FDCPA and FCRA by TBOM. *Id.* Plaintiff seeks statutory damages, compensatory damages, treble damages, punitive damages, attorneys' fees, costs, and interest. *Id.*

On March 4, 2026, Defendant TBOM filed the pending Motion to Dismiss the FAC. (ECF No. 15.) On April 13, 2026, Plaintiffs filed a Response in Opposition to TBOM's Motion to Dismiss the FAC. (ECF No. 17.) On April 20, 2026, TBOM filed a Reply in Support of the Motion to Dismiss the FAC. (ECF No. 18.)

On April 28, 2026, Plaintiff filed a Notice of Acceptance of MCM's Offer of Judgment. (ECF No. 19.) On May 11, 2026, pursuant to the terms of the Rule 68 Offer of Judgment, the Court ordered that judgment be entered for Plaintiff and against MCM only. (ECF No. 21.) Plaintiff's negligence and substantial assistance claims against TBOM remain and are the subject of this pending motion.

## II. ALLEGATIONS IN THE FIRST AMENDED COMPLAINT

This action arises from a credit card account maintained by Plaintiff with Defendant TBOM. (ECF No. 11 at ¶37.) At some point, Plaintiff fell behind on payments on the account. *Id.* at ¶38. Afterwards, TBOM began reporting negative information to credit reporting agencies regarding the account, which negatively impacted Plaintiff's credit score and creditworthiness. *Id.* at ¶¶39-41. TBOM then ceased reporting the account, deleted the tradeline, and "purportedly transferred the account to MCM for purposes of collection." *Id.* at ¶¶61, 89. The "purported transfer to MCM from TBOM was not a true sale," *id.* at ¶111, because "TBOM exercises control over MCM regarding the accounts TBOM transfers to MCM by requiring reporting to TBOM, auditing MCM, setting policies and procedures, and having the ability to recall accounts," *id.* at ¶199.

TBOM regularly transfers its accounts to MCM for the purposes of collection. *Id.* at ¶36. "MCM is near the top for the entire country in terms of the volume" of debt collector complaints received by the Consumer Financial Protection Bureau ("CFPB"). *Id.* at ¶31. Instances of public, official action against MCM's debt collection practices include a 2015

CFPB Consent Order for violations of the FDCPA, a 2020 CFPB action asserting failure to comply with the 2015 Consent Order, and a 2018 settlement with 42 State Attorneys General related to deceptive debt collection practices. *Id.* at ¶¶32-34. TBOM had actual or constructive notice of these actions as a matter of public record. *Id.* at ¶35.

Sometime after the transfer from TBOM, MCM began attempting to collect the debt associated with Plaintiff's account by sending letters and emails to the Plaintiff "threatening legal action." *Id.* at ¶62. In late 2024, MCM also began reporting to credit reporting agencies "negative information [about the Plaintiff] regarding a TBOM account with an account number of 32630XXXX and open date of February 27, 2024." *Id.* at ¶68. This information was incorrect, as Plaintiff never had a TBOM account with that account number and open date. *Id.* at ¶69. The information that MCM furnished negatively impacted Plaintiff's credit score and creditworthiness. *Id.* at ¶¶73-74. Plaintiff disputed MCM's information as inaccurate with three credit reporting agencies, which subsequently transmitted notice of the dispute to MCM. *Id.* at ¶¶92, 94. MCM then re-reported the inaccurate information on at least one occasion and deleted it at some point afterwards. *Id.* at ¶¶97, 103.

On May 12, 2025, MCM also filed a collection lawsuit against Plaintiff in Summit County, Ohio. *Id.* at ¶83. On October 7, 2025, MCM dismissed the lawsuit before responding to Plaintiff's discovery request, *id.* at ¶108, because "MCM never had any intention to pursue the Collection Action" and was instead hoping for a default judgment, *id.* at ¶109. In addition, "MCM didn't have standing to sue Plaintiff, in part, because the purported transfer to MCM from TBOM was not a true sale." *Id.* at ¶111.

## III. DISCUSSION

Defendant TBOM moves to dismiss the FAC's claims against TBOM on the following grounds: (1) Plaintiff fails to allege an injury-in-fact traceable to TBOM; (2) Plaintiff's claims relating to inaccurate credit reporting are preempted by the FRCA; (3) Plaintiff fails to state a claim for negligence; and (4) Plaintiff fails to state a claim for substantial assistance of violations of the FDCPA and FCRA.

**A. Standing**

TBOM contends that Plaintiff lacks Article III standing because Plaintiff fails to allege an injury-in-fact traceable to TBOM.

Federal Rule of Civil Procedure 12(b)(1) permits a court to dismiss a claim for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A jurisdictional attack pursuant to Rule 12(b)(1) may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

Here, TBOM solely contends that the allegations in complaint are insufficient to support standing: a facial attack. In a facial attack on subject matter jurisdiction under Rule 12(b)(1), the court assumes the factual allegations of the complaint to be true and draws all reasonable inferences in favor of the plaintiff. *Doe v. Holy See*, 557 F.3d 1066, 1073 (9th Cir. 2009). However, the court does not accept "the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).

The Article III standing doctrine limits federal court subject matter jurisdiction. *See La Associator de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). In order "to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). The party invoking federal jurisdiction bears the burden of establishing Article III standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). "[P]laintiffs must demonstrate standing for each claim

that they press against each defendant, and for each form of relief that they seek." *Murthy v. Missouri*, 603 U.S. 43, 44 (2024).

Here, TBOM challenges only the second requirement of Article III standing, traceability. (ECF No. 15-1 at 11.) To satisfy the traceability element of Article III standing, "there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Lujan*, 504 U.S. at 560; *see also Bennett v. Spear*, 520 U.S. 154, 167 (1997). "[T]he links in the chain of causation must not be too speculative or too attenuated." *Food and Drug Administration v. All. for Hippocratic Med.*, 602 U.S. 367, 383 (2024) (internal citations omitted). However, "[t]he traceability requirement is less demanding than proximate causation, and thus the causation chain does not fail solely because there are several links or because a single third party's actions intervened." *O'Handley v. Weber*, 62 F.4th 1145, 1161–62 (9th Cir. 2023) (internal quotations and citations omitted); *see also Ocean Advocates v. U.S. Army Corps of Engineers*, 402 F.3d 846, 860 (9th Cir. 2005) (explaining that, although "other factors may also cause" an injury, it may still be fairly traceable to a defendant if "the link . . . is not tenuous or abstract"); *Village of Arlington Heights v. Metro. Housing Dev. Corp.,* 429 U.S. 252, 261 (1977) (explaining that an injury may be "indirect" as long as it is fairly traceable to the defendant).

In *National Audubon Society v. Davis*, 307 F.3d 835 (2002), the 9th Circuit found that the plaintiff adequately alleged traceability where the challenged conduct—a state restriction on certain traps for wildlife predators—was the "but for" cause of the injury—decreased bird populations for observation. *Id.* at 849. "Contrary to the [defendant's] suggestion, there was no need to probe precisely why the federal government removed traps . . . beyond the uncontested fact that the traps would not have been removed *but for* [the state law]." *Id.*; *see also Santa Fe All. for Pub. Health and Safety v. City of Santa Fe, New Mexico*, 993 F.3d 802, 814 (10th Cir. 2021) ("[A]t the motion to dismiss stage, a plaintiff can satisfy the 'fairly traceable' requirement by advancing allegations which, if

proven, allow for the conclusion that the challenged conduct is a 'but for' cause of the injury."); *Duke Power Co. v. Carolina Envt'l Study Grp., Inc.*, 438 U.S. 59, 74–78 (1978) (noting that causation for standing purposes was satisfied if the challenged statute was the "but for" cause of injury).

Here, the FAC alleges that TBOM transferred Plaintiff's credit card account to MCM, and that MCM subsequently furnished false credit information and filed a frivolous lawsuit in an attempt to collect on that account. (ECF No. 11 at ¶¶61, 68-9, 143.) TBOM contends that "no facts are pleaded showing that the transfer itself . . . caused any injury" (ECF No. 15-1 at 12) and "MCM's independent decisions . . . break any causal chain between TBOM's conduct and Plaintiff's alleged harm" (ECF No. 18 at 12). TBOM further contends that "Plaintiff does not provide authority supporting the proposition that [transferring accounts to a debt collector with a history of enforcement actions] is a concrete injury that renders all subsequent misconduct fairly traceable to TBOM" and that "past enforcement actions do not plausibly establish . . . TBOM's knowledge of any contemporaneous wrongdoing affecting Plaintiff's account." *Id.*

Though MCM's alleged actions may be the direct cause of Plaintiff's injury, "the causation chain does not fail solely because a single third party's actions intervened." *O'Handley*, 62 F.4th at 1161–62. Drawing all reasonable inferences in favor of the Plaintiff, the Court finds the FAC adequately alleges that TBOM's transfer of the account was a fairly traceable, indirect cause of Plaintiff's alleged injury. *See Village of Arlington Heights*, 429 U.S. at 261. The causation chain is neither speculative nor attenuated: there are only two links (TBOM's transfer and MCM's collection actions), and, taking the FAC's allegations as true, TBOM's knowledge of complaints against MCM made MCM's subsequent actions sufficiently predictable for the purposes of standing, even if TBOM had no knowledge of any contemporaneous wrongdoing affecting Plaintiff. Though TBOM characterizes MCM's conduct as "independent," it does not dispute that, but for TBOM's transfer of Plaintiff's account, MCM would not have undertaken debt collection efforts as to Plaintiff. As in *National Audubon Society*, characterizing MCM's motivations here as

"independent" is irrelevant when TBOM was a fairly traceable but-for cause of MCM's alleged conduct. 307 F.3d at 835. Accordingly, TBOM's motion to dismiss for lack of standing is denied.

**B. Failure to State a Claim**

TBOM moves to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) Plaintiff's claims against TBOM are preempted by the FCRA to the extent they arise from MCM's inaccurate reporting of credit information; (2) Plaintiff fails to allege sufficient facts for a plausible claim of negligence; and (3) Plaintiff fails to allege a cognizable legal theory or sufficient facts for a plausible claim of substantial assistance in violating the FCRA and FDCPA.

***1. Legal Standard***

Rule 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP") permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, a pleading "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal under FRCP Rule 12(b)(6) "is proper only where there is no cognizable legal theory[,] or an absence of sufficient facts alleged to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (alteration in original) (quoting Fed. R. Civ. P. 8(a)). "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (internal quotations omitted).

### ***2. Preemption***

TBOM contends that both of Plaintiff's claims against TBOM are expressly preempted by the FCRA, to the extent the claims arise from MCM's alleged inaccurate reporting of credit information and not MCM's filing of a frivolous collection suit.

Section 1681t(b)(1)(F) of the FCRA states: "No requirement or prohibition may be imposed under the laws of any State . . . with respect to any subject matter regulated under . . . section 1681s–2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. § 1681t(b)(1)(F). Section 1681s-2 delineates a series of responsibilities for furnishers of credit information. Notably,

> Section 1681s–2(a) begins with a flat prohibition in (1)(A) directed against "[a] person" furnishing information "relating to a consumer" to a CRA "if the person knows or consciously avoids knowing that the information is inaccurate." This prohibition is reinforced in subsection (1)(B) by a prohibition of furnishing inaccurate information after notice of actual inaccuracy from the affected consumer. Subsection (2) imposes a duty on regular furnishers of credit information to correct and update the information they provide so that the information is "complete and accurate." Subsection (3) imposes a duty on such furnishers to notify CRAs if a consumer disputes the information furnished. Subsection (4) obliges furnishers to notify the CRA of the closure of a consumer's account, and subsection (5) imposes a similar obligation to notify the CRA of delinquent accounts.

*Nelson v. Chase Manhattan Mortg. Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002). The remaining subsections of § 1681s-2(a) create: (6) A duty to refrain from reporting information resulting from identity theft; (7) a duty to notify consumers when reporting

negative information; (8) a duty to investigate, report, and correct information after notification by a consumer of a dispute; and (9) a duty to notify credit reporting agencies about one's status as medical information furnisher. *See* 15 U.S.C. § 1681s–2(a). Section 1682s-2(b) specifies the duties of furnishers upon receiving notice of a dispute from a credit reporting agency, including investigating the dispute, correcting information, and reporting the results to credit reporting agencies. *See* 15 U.S.C. § 1682s-2(b).

There is an open question in the Ninth Circuit on the breadth of § 1681t's preemption. Due to the potentially conflicting interaction of § 1681t with another preemption provision of the FCRA, § 1681h(e), courts have split on whether section 1681t (1) totally preempts all state law claims with respect to § 1681s-2 duties; (2) preempts all state statutory claims and only state tort claims that do not allege malice or willful intent; (3) preempts only state statutory claims and not state tort claims; (4) preempts only state claims predicated on acts after a furnisher receives notice of inaccuracies; or (5) merely constitutes a grant of immunity for making certain required disclosures. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1166–67 (9th Cir. 2009) (discussing, without resolving, the split in approaches). "The majority of district courts in the Ninth Circuit favor the [first] total preemption approach." *Khankin v. JLR San Jose, LLC*, 720 F. Supp. 3d 816, 823 (N.D. Cal. 2024) (quoting *Farrell v. Portfolio Recovery Assocs.*, No. CV 14-03941 RGK, 2014 WL 7745881, at *4 (C.D. Cal. Sept. 19, 2014)).

Regardless of the approach taken, generally "preemption language is to be 'narrowly and strictly construed.'" *Jensen Fam. Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 939 (9th Cir. 2011) (quoting *Montalvo v. Spirit Airlines*, 508 F.3d 464, 474 (9th Cir. 2007)). The Ninth Circuit has cautioned that "§ 1681t(b)(1)(F) does not preempt state law claims against a defendant who happens to be a furnisher of information to a consumer reporting agency within the meaning of the [Federal Credit Reporting Act] if the claims against the defendant do not also concern that defendant's legal responsibilities as a furnisher of information under the FCRA." *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1235 (9th Cir. 2023) (quoting *Galper v. JP Morgan Chase*

*Bank, N.A.*, 802 F.3d 437, 446 (2d Cir. 2015)). In *Aargon*, the court "decline[d] to read § 1681t(b)(1)(F) [so] broadly" as to "preempt[] any state law 'relating' to a furnisher's duties." *Id.* Instead, the court found that the phrase "with respect to" in § 1681t(b)(1) "massively limits the scope of preemption to only those state laws that concern the phrase's referents." *Id.* (internal quotation marks omitted) (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 261 (2013)). The state law in *Aargon* concerned the timing of medical debt reporting; because such timing "does not affect furnishers' obligations to provide accurate information to CRAs as regulated by § 1681s-2(a), nor does it affect their obligations upon notice of consumer disputes as regulated by § 1681s-2(b)," the court found no preemption. *Id.* at 1236. Even though some provisions of § 1681s-2 related to the timing of certain furnisher reports, the court found no interference by the state law, as 1681s-2 set no deadline specifically for reporting debt. *Id.*

Here, TBOM contends that holding it liable for MCM's allegedly inaccurate credit reports "run[s] straight into the FCRA's broad preemption provision." (ECF No. 15-1 at 14.) Citing *Gorman* for the proposition that § 1681t "precludes all state law theories of liability relating to responsibilities of furnishers," *id.*, TBOM argues that "Plaintiff does not identify any duty allegedly breached by TBOM that is meaningfully distinct from [§ 1681s-2] duties" and that "Plaintiff's claimed injuries . . . are all expressly linked to allegedly inaccurate reporting." (ECF No. 18 at 5.) TBOM further argues that, because negligence claims against MCM for inaccurate reporting would be preempted, holding TBOM liable for "the same alleged furnisher misconduct . . . would nullify the very preemption Congress enacted." *Id.* at 6. Plaintiff contends that the FAC's negligence and substantial assistance claims are not preempted because they do not "concern the responsibilities imposed by data furnishers under . . . § 1681s-2." (ECF No. 17 at 19.) Instead, Plaintiff argues the claims concern the fact that "TBOM breached its duties . . . by *transferring* Plaintiff's account to MCM without any regard for the deceptive acts and practices that MCM engages in." (ECF No. 17 at 20.)

The Court finds that Plaintiff's negligence and substantial assistance claims are not preempted by the FCRA. Neither party in this case has briefed the exact scope of § 1681t with regards to its interaction with § 1681h(e). The Court need not decide this issue, however, because even assuming the broadest approach of "total preemption," Ninth Circuit precedent indicates that § 1681t(b)(1)(F) is not so broad as to preempt any state claim "relating" to furnisher duties; instead, the preemption analysis turns on whether the challenged conduct or law implicates or interferes with one of the express duties contained in § 1681s-2. *Aargon Agency, Inc.*, 70 F.4th at 1235.[1]

The FAC does not allege that TBOM violated its obligations as a furnisher to provide accurate credit information or its obligations upon notice of consumer disputes. Instead, the FAC alleges that TBOM's transfer of Plaintiff's account was wrongful. None of the statutory duties listed in § 1681s-2 create obligations concerning selecting downstream furnishers of credit information. Though TBOM's transfer is expressly linked to an *injury* arising from inaccurate credit reporting, the conduct itself implicates an alleged duty debt collectors owe in the transfer of accounts. That duty is meaningfully different than the duty furnishers owe in reporting credit information. *See Guillen v. Bank of Am. Corp.*, No. 5:10-CV-05825 EJD, 2011 WL 4071996, at *6 (N.D. Cal. Aug. 31, 2011) (finding no FCRA preemption because the "[challenged] conduct arises from the role of Defendants as 'debt collectors' . . . rather than . . . as a 'furnisher' of credit information per § 1681s–2(b)"); *Alborzian v. JPMorgan Chase Bank, N.A.*, 185 Cal. Rptr. 3d 84, 93 (Cal. App. 2d Dist. 2015) ("[P]laintiffs' claims are grounded in defendants' deceptive efforts to collect Chase's loan; plaintiffs' allegations of false credit reporting go solely to the injury they claim to have suffered . . . . In such cases, there is no preemption."). Accordingly, the motion to dismiss the FAC's claims as preempted by the FCRA is denied.

---

[1] TBOM's reliance on *Gorman* for its statement that "§ 1681t(b)(1)(F) appears to preempt all state law claims based on a creditor's responsibilities under § 1681s-2," *Gorman*, 584 F.3d at 1166, is inapposite, because the panel there expressly reserved ruling on the exact scope of preemption required by § 1681t(b)(1)(F). *See id.* at 1168.

### 3. *Negligence*

TBOM contends that Plaintiff fails to allege sufficient facts in support of her negligence claim against TBOM.

To determine whether Plaintiff has adequately alleged facts to support her negligence claim, the Court must first determine which state's law of negligence applies. "In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state." *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). California uses a "governmental interest" analysis to determine choice-of-law issues when there is no stipulated choice-of-law provision. *Cooper v. Tokyo Elec. Power Co. Holdings*, 960 F.3d 549, 559 (9th Cir. 2020). The analysis involves three steps:

> First, the court must determine whether the substantive laws of California and the foreign jurisdiction differ on the issue before it. Second, if the laws do differ, then the court must determine what interest, if any, the competing jurisdictions have in the application of their respective laws. If only one jurisdiction has a legitimate interest in the application of its rule of decision, there is a 'false conflict' and the law of the interested jurisdiction is applied. But if more than one jurisdiction has a legitimate interest, the court must move to the third stage of the analysis, which focuses on the 'comparative impairment' of the interested jurisdictions.

*Id.* (internal citations omitted) (citing *McGhee v. Arabian Am. Oil Co.*, 871 F.2d 1412, 1422 (9th Cir. 1989)).

At the first step, the Court must determine "if application of the different states' laws would lead to different results." *Stein v. Farmers Ins. Co. of Arizona*, 734 F. Supp. 3d 1021, 1029 (S.D. Cal. 2024) (citing *McCann v. Foster Wheeler LLC*, 225 P.3d 516 (2010)). If the laws do not differ, California law presumptively applies. *N. River Ins. Co. v. James River Ins. Co.*, 116 F.4th 855, 857 (9th Cir. 2024). Plaintiff contends that the Court should apply Ohio law, "the jurisdiction where Plaintiff suffered harm." (ECF No. 17 at 22). TBOM, in its motion to dismiss, applies California law (ECF 15-1 at 15); in the alternative, TBOM

contends that "there is no conflict between Ohio and California law on the point in question." (ECF No. 18 at 7.) The parties do not allege that the law of any other jurisdiction should apply.

Under both California and Ohio law, a claim for negligence requires the elements of (1) duty, (2) breach, (3) causation, and (4) damages. *See Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 318 (2006); *Ohio Turnpike and Infrastructure Comm'n v. Vlasach*, 120 N.E.3d 105, 110 (Ohio App. 7th Dist. 2018). TBOM contends that the FAC fails to allege a legal duty sufficient to sustain a negligence claim under both California and Ohio law.

Under California law, as a general rule, "a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money.'" *Nymark v. Heart Fed. Sav. & Loan Ass'n*, 231 Cal.App.3d 1089, 1095–96 (1991). The California Supreme Court "understand[s] this general principle as a refinement of the contractual economic loss rule in the lender-borrower context." *Sheen v. Wells Fargo Bank, N.A.*, 505 P.3d 625, 636 (Cal. 2022). Similarly, courts in this jurisdiction have held that, under California law, "a debt collector [generally] owes no duty of care to debtors in the collection of consumer debts'" unless "their debt collection efforts go beyond the pale and constitute harassing and abusive behavior." *Singh v. AutoZone Parts*, Inc., No. 2:23-CV-01379-TLN-CSK, 2024 WL 3673063, at *3 (E.D. Cal. Aug. 5, 2024) (citations omitted). Applying this principle, a court found no duty of care owed even where a debt collector "called [a plaintiff] at least six times a day and at all hours, called her parents and tenant, threatened to change the locks on her house, [and] threatened to disturb her tenants," because the "allegations show only that Defendant acted as a loan servicer seeking to collect on a debt." *Inzerillo v. Green Tree Servicing LLC*, No. 13-CV-06010-MEJ, 2014 WL 1347175, at *6 (N.D. Cal. Apr. 3, 2014).

Under Ohio law, "[t]he relationship of debtor and creditor without more is not a fiduciary relationship." *Umbaugh Pole Bldg. Co. v. Scott*, 390 N.E.2d 320, 321 (1979). Only when "both parties understand that a special trust or confidence has been reposed"

does a creditor owe a fiduciary duty. *Lippy v. Soc. Natl. Bank*, 651 N.E.2d 1364, 1368 (Ohio App. 11th Dist. 1995); *see also Stone v. Davis*, 419 N.E.2d 1094, 1099 (Ohio 1981) (finding a fiduciary duty where a creditor gave advice "as to the benefits of procuring mortgage insurance"). Applying this principle, Ohio courts have dismissed negligence claims against creditors acting in their ordinary capacity. *See Dooley v. Wells Fargo Bank, Nat. Ass'n*, 941 F. Supp. 2d 862, 867 (S.D. Ohio 2013) (collecting cases). This is because "a claim that a bank is negligently administering a loan is an action in contract and not a tort action, since any duties the bank has arise out of contract" *Wells Fargo Bank, N.A. v. Favino*, No. 1:10 CV 571, 2011 WL 1256771, at *14 (N.D. Ohio Mar. 31, 2011) (citing *Nichols v. Chicago Title Ins. Co.,* 669 N.E.2d 323, 332 (Ohio App. 1995)), and the "economic loss doctrine" in "Ohio law prevents the recovery of purely economic losses in a negligence action . . . where recovery of such damages is not based upon a tort duty independent of contractually created duties," *Dooley*, 941 F. Supp. 2d at 866 (citing *Pavlovich v. Nat'l City Bank,* 435 F.3d 560, 569 (6th Cir.2006)).

Based on the parties' submissions, and drawing all reasonable inferences in favor of the Plaintiff, the Court finds that the FAC fails to allege facts sufficient to support the duty element of negligence under either California or Ohio law. Plaintiff does not allege that TBOM's transfer of her account to MCM "exceed[s] the scope of its conventional role as a mere lender of money," *Nymark*, 231 Cal.App.3d at 1095–96, or "go[es] beyond the pale . . . [to] constitute harassing and abusive behavior" as a debt collector, *Singh*, 2024 WL 3673063, at *3. Neither does Plaintiff allege any facts showing that both TBOM and Plaintiff understood that "a special trust or confidence ha[d] been reposed" in the servicing of Plaintiff's credit card account. *Lippy*, 651 N.E.2d at 1368. Based on the allegations of the FAC, the Court finds that TBOM's transfer of Plaintiff's account was within an ordinary creditor-debtor relationship, which does not create a legal duty under either California or Ohio law. TBOM's challenged conduct arises only from its contractual duties as a creditor, such that the economic loss doctrine prevents recovery. *See Sheen* 505 P.3d at 636; *Dooley*, 941 F. Supp. 2d at 866.

The Court finds that the FAC fails to allege TBOM had a legal duty of care; because a duty of care is a required element of a negligence claim under California and Ohio law, the Court reserves ruling on the negligence elements of breach, causation, and damages. Accordingly, the motion to dismiss the negligence claim against TBOM is granted.

### 4. *"Substantial Assistance"*

TBOM contends that Plaintiff fails to provide a cognizable legal theory or sufficient facts to support her claim alleging TBOM "substantially assisted" violations of the FDCPA and FCRA.

#### *a. Aiding and Abetting Liability*

"Substantial assistance" is generally held to be an element of common law aiding-and-abetting liability. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 486 (2023); Restatement (Second) of Torts § 876(b) (1979). "[W]hen Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." *C. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 182 (1994). "If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text." *Id.* at 177. This principle is in contrast with the general presumption that "Congress is understood to legislate against a background of common law adjudicatory principles." *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 108 (1991). As a result, multiple courts have held that "[t]here is no support in the FDCPA for extending its coverage to secondary liability for aiding and abetting." *Rich v. BAC Home Loans Servicing LP*, No. CV-11-00511-PHX-SRB, 2013 WL 10104612, at *5 (D. Ariz. Dec. 13, 2013); *see, e.g.*, *Giotta v. Ocwen Fin. Corp.*, No. 15-CV-00620-BLF, 2015 WL 8527520, at *9 (N.D. Cal. Dec. 11, 2015); *Stenzel v. Equifax Info. Services, LLC*, No. 8:19-CV-1247-T-60SPF, 2020 WL 60156, at *4 (M.D. Fla. Jan. 6, 2020).

This Court joins other courts, including those cited above, in finding that the FDCPA does not extend liability to aiders-and-abettors. *See id*. Additionally, Plaintiff has not cited,

and the Court is not aware of, any authority imposing aiding-and-abetting liability for violations of § 1681s-2(b) of the FCRA. Examining the provisions of § 1681s-2(b), the Court finds no reference to "aiders-and-abettors"; rather, § 1681s-2(b) creates a duty only for furnishers that "receiv[e] notice . . . of a dispute with regard to the completeness or accuracy of any information provided by [the furnisher]." 15 U.S.C. § 1681s-2(b). The Court thus finds that neither the FDCPA nor § 1681s-2(b) of the FCRA can support a claim for aiding-and-abetting liability. Accordingly, to the extent that the "substantial assistance" claim rests on an aiding-and-abetting theory, it fails as a matter of law.

*b. Vicarious Liability*

Plaintiff's Response in Opposition contends that the "substantial assistance" claim in the FAC incorporates a theory of vicarious liability. (ECF No. 17 at 26-31.) TBOM contends that "Plaintiff did not plead vicarious liability in the FAC." (ECF No. 18 at 9.) Alternatively, TBOM contends that Plaintiff fails to plead sufficient facts to support vicarious liability. *Id.* at 10.

"[I]t is 'axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.'" *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 n. 8 (N.D. Cal. 2021) (quoting *Apple Inc. v. Allan & Assoc. Ltd.*, 445 F. Supp. 3d 42, 59 (N.D. Cal. 2020)). Aiding-abetting-liability and vicarious liability are distinct. *See In re First All. Mortg. Co.*, 471 F.3d 977, 996 n. 6 (9th Cir. 2006) (distinguishing between vicarious liability and aiding-and-abetting liability in applying California's Unfair Competition Law); *Ray v. BlueHippo Funding, LLC*, No. C06-01807 JSW, 2008 WL 1995113, at *4 (N.D. Cal. May 6, 2008) (same). "[A]n aiding and abetting theory imposes liability on a defendant for its own acts while vicarious liability imposes liability on a defendant for the acts of its agents." *Bank v. Vivint Solar, Inc.*, No. 18-CV-2555 (MKB), 2019 WL 2280731, at *6 (E.D.N.Y. Feb. 25, 2019), *report and recommendation adopted*, No. 18CV2555MKBRLM, 2019 WL 1306064 (E.D.N.Y. Mar. 22, 2019). Thus, vicarious liability does not "require[] direct participation by the accused," *State Farm Fire and Cas. Co. v. Bomke*, 849 F.2d 1218, 1220 (9th Cir. 1988), and does not require an element of

substantial assistance. *See generally* Restatement (Third) of Agency § 7.07(3). Rather, "[t]raditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment." *Meyer v. Holley*, 537 U.S. 280, 285 (2003).

Here, the Court finds that the FAC did not plead a theory of vicarious liability, thus Plaintiff cannot amend one in through her Opposition brief. The relevant claim is captioned as pleading "substantial assistance," which is not necessary to vicarious liability, and makes no express allegations regarding the necessary elements of a "principal-agent relationship" between TBOM and MCM or MCM's "scope of authority."

Even if the Court construes the "substantial assistance" claim as one alleging vicarious liability, the FAC fails to allege sufficient facts to support such a theory.[2] Courts in this circuit have applied common law agency principles in holding parties vicariously liable under both the FDCPA and FCRA. *See Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1173 (9th Cir. 2006) (acknowledging that parties can be vicariously liable under the FDCPA); *Xu v. Better Mortg. Corp.*, No. 5:23-CV-05510-PCP, 2025 WL 28556, at *3 (N.D. Cal. Jan. 3, 2025) (noting that, though "[t]he Ninth Circuit has not decided whether a party can be vicariously liable under the FCRA . . . district courts within the Ninth Circuit and other Circuits have permitted vicarious liability for FCRA violations"). Under general principles of agency, a principal must exercise control over an agent to be held liable if there is no allegation of actual or apparent authority. *See Clark*, 460 F.3d at 1173 (requiring control for vicarious liability under the FDCPA); *Kwang Kim*

---

[2] TBOM separately contends that it cannot be vicariously liable for violations of the FDCPA specifically because it is not a "debt collector" as defined by the statute. (*See* ECF No. 18 at 9.) The Ninth Circuit "has never addressed the question whether a person must also be a 'debt collector' subject to the FDCPA to be vicariously liable for the actions of another person." *McAdory v. M.N.S. & Associates, LLC*, 952 F.3d 1089, 1104-05 (9th Cir. 2020) (Bea, J., dissenting). Because the Court's ruling on the sufficiency of factual pleadings dismisses the claim of vicarious liability as to both the FDCPA and FCRA, the court reserves ruling on this matter.

*v. Wilmington Tr. Co.*, No. 17CV528-WQH-AGS, 2018 WL 4296983, at *8 (S.D. Cal. Sept. 7, 2018) (noting the same for the FCRA). The control theory of vicarious liability is premised on employer-employee liability. *See Edwards v. Toys "R" Us*, 527 F. Supp. 2d 1197, 1213 (C.D. Cal. 2007); *see generally* Restatement (Third) of Agency § 7.04.

The Ninth Circuit has "adopt[ed] the ten non-exhaustive factors set forth in the Restatement (Second) of Agency § 220(2) for determining whether a principal exercises sufficient control over an agent to be held vicariously liable as if it were the agent's employer." *Jones v. Royal Administration Services, Inc.*, 887 F.3d 443, 446 (9th Cir. 2018) (applying general common law principles to determine vicarious liability under the Telephone Consumer Protection Act). The first factor, the "extent of control exercised," is the "essential ingredient." *Id.* at 450 (quoting *United States v. Bonds*, 608 F.3d 495, 505 (9th Cir. 2010)). The rest of the control factors are:

> 2) whether the one employed is engaged in a distinct occupation, 3) whether the work is normally done under the supervision of an employer, 4) the skill required, 5) whether the employer supplies tools and instrumentalities [and the place of work], 6) the length of time employed, 7) whether payment is by time or by the job, 8) whether the work is in the regular business of the employer, 9) the subjective intent of the parties, and 10) whether the employer is or is not in business.

*Id.* (quoting *Bonds*, 608 F.3d at 505). In *Jones*, the Ninth Circuit found that the plaintiff did not allege sufficient facts to show a level of control that would support vicarious liability. *Id.* at 451. The panel found that, while the defendant there "exercised some amount of control over [the agent telemarketer]" including receiving weekly reports, requiring compliance with defendant's "guidelines and procedures," and having the power to suspend its relationship, defendant did not control the hours or quotas of the agent nor did it "specifically control[] any part of any of the calls at issue." *Id.* Summarizing its review of the other factors, the *Jones* court noted that the agent "was its own independent business that sold VSCs for multiple companies without the direct supervision of a [defendant]

employee. [The agent] provided its own equipment, set its own hours, and only received payment if one of its telemarketers actually made a sale." *Id.* at 453.

Plaintiff contends that TBOM is vicariously liable because "TBOM exercises control over MCM regarding the accounts TBOM transfers to MCM" such that "MCM acted as an agent on behalf of TBOM to collect the debt." (ECF No. 17 at 30.) The FAC alleges that "TBOM participates in the placing and transfer of consumer debt portfolios and has the authority to control the transfers" and that "TBOM exercises control over MCM . . . by requiring reporting to TBOM, auditing MCM, setting policies and procedures, and having the ability to recall accounts." (ECF No. 11 at ¶¶32-33.) TBOM contends that "at most, [these allegations] describe a creditor authorizing collection and retaining contractual oversight, which is insufficient as a matter of law to establish agency." (ECF No. 18 at 10-11.)

Taking the FAC's allegations as true, and making all inferences in favor of Plaintiff, the Court finds insufficient facts to support an allegation of control necessary to impose vicarious liability. Reporting, auditing, and the right to recall accounts are not facts that imply a level of control sufficient for vicarious liability. *See Jones*, 887 F.3d at 451. Neither is a general allegation of "setting policies and procedures." *See id.* The FAC does not make any allegations regarding the other control factors, including the independence of MCM as a business, the presence or absence of direct supervision by TBOM employees, and what tools and instrumentalities were supplied by TBOM. Accordingly, the Court finds that, to the extent the "substantial assistance" claim rests on a vicarious liability theory, it fails as a matter of law.

Because the FAC cannot support either a theory of aiding-and-abetting or vicarious liability, the motion to dismiss the "substantial assistance" claim against TBOM is granted.

## IV. LEAVE TO AMEND

TBOM opposes giving Plaintiff leave to amend, requesting dismissal of her claims with prejudice because "Plaintiff makes no claim of ability to cure [the] defects" in her complaint. (ECF No. 18 at 2.)

Federal Rule of Civil Procedure 15 mandates that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). "This policy is to be applied with extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (per curiam) (quoting *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)). "Dismissal without leave to amend is improper unless it is clear . . . the complaint could not be saved by any amendment." *B&G Foods N. Am., Inc. v. Embry*, 29 F.4th 527, 541 (9th Cir. 2022) (quoting *Polich v. Burlington N., Inc.*, 942 F.2d 1467, 1472 (9th Cir. 1991)).

The Court does not find that it is clear the FAC could not be saved by any amendment. Accordingly, the Court grants Plaintiff leave to amend the FAC to correct the deficiencies addressed in this order.

## V. CONCLUSION

IT IS HEREBY ORDERED that Defendant TBOM's Motion to Dismiss the FAC (ECF No. 15) is granted. Plaintiff's claims for negligence and substantial assistance against TBOM are dismissed without prejudice.

IT IS FURTHER ORDERED that Plaintiff may file a second amended complaint within thirty (30) days of the filing of this Order. If no second amended complaint is filed within thirty (30) days, the Court will order the Clerk of the Court to issue judgment consistent with the rulings in this Order and close the case.

Dated: 11/9/2026

William Q. Hayes

Hon. William Q. Hayes
United States District Court